# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

STEVEN ANTHONY PACK,

       Petitioner,

   v.

SUZANNE M. PEERY, Acting Warden, CCF Susanville,

       Respondent.

Case No. 1:13-cv-00585-DAD-SKO  HC

FINDINGS AND RECOMMENDATION TO DENY MOTION TO SET ASIDE JUDGMENT

(Doc. 44)

Petitioner Steven Anthony Pack, a state prisoner proceeding *pro se*, moves under F.R.Civ.P. 60(b)(1) to set aside the judgment denying his petition for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner contends that his failure to file timely objections to the findings and recommendations constituted excusable neglect for which the judgment should be set aside. In the alternative, Petitioner seeks to set aside the judgment under the extraordinary circumstances provision of F.R.Civ.P. 60(b)(6). The undersigned recommends that the Court deny the motion.

## I.    Factual and Procedural Background [1]

Early in the morning of August 18, 2007, in a liquor store parking lot in which taco trucks gathered, Petitioner and co-defendants Nicholas Castenada and Jose Barajas, Jr., encountered a

---

[1] The findings and recommendations (Doc. 34) set forth a more detailed account to the incident, the proceedings that led to Petitioner's conviction, and the postconviction proceedings in state court.

1

group of soccer players on their way home from an evening of drinking and dancing. After Petitioner and his co-defendants peppered the soccer players with a variety of verbal insults, the interaction escalated into a verbal argument. Ultimately, Petitioner and the co-defendants got into Castenada's car, backed slowly toward the group of soccer players, and fired into the group. Kevin Argueta sustained a fatal head wound and died at the scene.

In Stanislaus County Superior Court in February 2010, a jury found Petitioner (1) guilty of second-degree murder, two counts of assault with a firearm, and negligent discharge of a firearm; (2) not guilty of two attempted murder counts, one count of intentionally shooting at an occupied vehicle, a gang enhancement appended to the murder charges, and gang participation. The jury deadlocked on other gang enhancements and seven attempted murder counts. On September 17, 2010, the trial court sentenced Petitioner to a term of 40 years to life in prison.

Petitioner appealed the convictions to the California Court of Appeal, Fifth Appellate District, which affirmed the convictions in all regards on May 31, 2012. The California Supreme Court summarily denied the appeal on September 12, 2012.

On April 15, 2013, Petitioner filed a petition for writ of habeas corpus in this Court. On September 8, 2016, the Magistrate Judge entered findings and recommended that the Court deny the petition for writ of habeas corpus and decline to issue a certificate of appealability. The findings and recommendations provided that either party could file objections within thirty days. Although the Court twice granted Petitioner's motions for enlargements of time, granting him a total of ninety days in which to object, its November 16, 2016, order provided that no further extensions would be granted. Nonetheless, on December 16, 2016, Petitioner again moved for an extension of time. The Court denied the motion. Neither Petitioner nor Respondent filed objections to the findings and recommendations. On January 17, 2017, the Court adopted the findings and recommendations and entered judgment denying the petition. On May 5, 2017, Petitioner moved for relief from judgment under F.R.Civ. P. 60(b).

## II.  Rule 60(b) Motions Are Limited in Habeas Actions

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to all petitions for writ of habeas corpus filed on or after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Among other purposes, AEDPA was intended to ensure greater finality of state and federal court judgments in criminal cases. *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). To accomplish its purpose, AEDPA imposes significant restrictions on second or successive petitions. 28 U.S.C. § 2244(b). With limited exceptions, a petitioner may not pursue relief in a second or successive habeas petition. *Id.* Even in those cases in which the statute permits a prisoner to file a second or successive petition, the prisoner must first move in the appropriate circuit court of appeals for authorization to file the second or successive petition. 28 U.S.C. § 2244(b)(3)(A). Failure to secure authorization is a jurisdictional bar that requires a district court to dismiss the petition. *Rishor v. Ferguson*, 822 F.3d 482, 490 (2016) (petition for *cert.* pending).

AEDPA's restrictions on second or successive habeas applications severely limit the application of F.R.Civ.P. 60(b) in federal habeas actions. *See Barrett v. Yearwood*, 83 Fed. Appx. 160, 161 n. 1 (9th Cir. 2003). The Federal Rules of Civil Procedure may be applied, when appropriate, in § 2254 proceedings, but only to the extent that they are not inconsistent with other statutory provisions or the Rules Governing Section 2254 Cases in the United States District Courts. Rule 12, Rules Governing Section 2254 Cases in the United States District Courts. As a result, a petitioner may not rely on the provisions of R. 60(b) if a reconsideration motion under R. 60(b) is tantamount to a second or successive petition.

A Rule 60(b) motion is subject to AEDPA's restrictions on second or successive petitions when the motion seeks to present newly discovered evidence, add a new claim for relief, attack the resolution of a claim on its merits, or vacate a judgment based on a subsequent change in the law.

*Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005). The restrictions do not apply, however, if the motion seeks only to address a defect in the integrity of the federal habeas proceedings. *Id.* at 532. "Put another way, a motion that does not attack 'the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably' raises a claim that takes it outside the bounds of Rule 60(b) and within the scope of AEDPA's limitations on second or successive habeas corpus petitions." *Jones v. Ryan*, 733 F.3d 825, 834 (9th Cir. 2013).

In this case, Petitioner seeks relief from judgment based solely on the denial of his third motion for extension of time to file objections. To the extent that Petitioner does not seek to vacate the judgment based on its substantive provisions, the R. 60(b) motion is not limited by AEDPA's restrictions on second or successive petitions. Reaching this conclusion requires drawing a very fine dividing line, however, since setting aside the judgment to permit Petitioner to file objections is ultimately intended to permit advocacy for substantive change. The undersigned has been unable to identify any prior case addressing similar facts. The Court need not reach this issue, however, if it agrees with the undersigned that Petitioner did not allege a basis sufficient to set aside the judgment.

## III.   Standards for Reviewing Rule 60(b)(1) Motions

"[A] court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." F.R.Civ. 60(b)(1). As stated above, Petitioner contends that his failure to file objections within the time period provided by the findings and recommendations resulted from his excusable neglect.

"[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993). In *Pioneer*, the Supreme Court described a continuum of failure to comply with a filing deadline, including at one end, an act of God or unforeseen human intervention, and at the other end, the party's decision simply to ignore the deadline. *Id.* at 387-88. In the middle are instances in which the filer chooses to miss the deadline

4

for reasons of varying value, such as stopping to render first aid to an accident victim, inadvertence, or miscalculation. *Id.* at 388. The Court found that the rule itself granted a reprieve to "out-of-time filings that were delayed by 'neglect,'" the plain meaning of which includes both faultless omissions to act and omissions resulting from carelessness. *Id.* By empowering the courts to accept late filings in cases of excusable neglect, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.*

"[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The relevant circumstances include (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. *Id.*; *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000).

In this regard, Petitioner's reliance on *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001), overruled on other grounds by *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), is misplaced. In *TCI*, a widow's motion to set aside a default judgment against her in a dispute with her mother-in-law concerning the proceeds of her late husband's life insurance policy was evaluated in the context of the differing principles related to default judgments. 244 F.3d at 693. In addition, nothing in *TCI* supports Petitioner's contention that "'excusable neglect' . . . implies some degree of sloth, carelessness or lack of diligence can be tolerated so long as it was not intentional and did not operate to an unreasonable degree to prejudice the opposing party." Doc. 44 at 8-9.

## A.  <u>Prejudice Against the Opposing Party</u>

Petitioner assumes that the State of California cannot be prejudiced by the Court's granting Petitioner's Rule 60(b) motion. Petitioner's assumption misunderstands the nature of federal habeas

corpus relief and the interest in the finality of judgments of the citizens on whose behalf the state acts.

In light of "the profound societal costs that attend the exercise of habeas jurisdiction," the statutory scheme significantly limits federal courts' jurisdiction to grant habeas relief. *Calderon v. Thompson*, 523 U.S. 538, 554-55 (1998) (quoting *Smith v. Murray*, 477 U.S. 527, 539 (1986)). The limits reflect the states' interest in the finality of convictions that have survived the state courts' direct review. *Calderon*, 523 U.S. at 555 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993)). Addressing a circuit court's determination to recall its mandate in a capital case, the Supreme Court explained:

> Finality is essential to both the retributive and the deterrent functions of criminal law. "Neither innocence nor just punishment can be vindicated until the final judgment is known." [*McClesky v. Zant*, 499 U.S. 467, 491 (1991).] "Without finality, the criminal law is deprived of much of its deterrent effect." [*Teague v. Lane*, 489 U.S. 288, 309 (1989).]

> Finality also enhances the quality of judging. There is perhaps "nothing more subversive of a judge's sense of responsibility, of the inner subjective conscientiousness which is so essential a part of the difficult and subtle art of judging well, than an indiscriminate acceptance of the notion that all shots will always be called by someone else." Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L.Rev. 441, 451 (1963).

> Finality serves as well to preserve the federal balance. Federal habeas review of state convictions frustrated "'both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'" [*Murray v. Carrier*, 477 U.S. 478, 487 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)) .] "Our federal system recognizes the independent power of a State to articulate societal norms through criminal law; but the power of a State to pass laws means little if the State cannot enforce them." *McClesky*, 499 U.S. at 491[].

> *Calderon*, 523 U.S. at 555-56.

Granting Petitioner's Rule 60(b)(1) motion in this case would result in prejudice to the State of California, which had a reasonable expectation in the finality of the judgment.

*///*

*///*

**B.    Circumstances of Petitioner's Delay**

All motions under Rule 60(b) must be filed within a reasonable time.  F.R.Civ.P. 60(c)(1).
"What constitutes reasonable time depends on the facts of each case."  *United States v. Holtzman*,
762 F.2d 720, 725 (9th Cir. 1985).  The court must analyze the facts to determine whether the movant
had a good reason for failing to act sooner and whether the opposing party was prejudiced by the
delay.  *Id.*  Performing the analysis necessarily implicates the reason for the delay and the presence
or lack of good faith.

According to procedural rules, a party may object to findings and recommendations entered
by a magistrate judge within fourteen days after being served with a copy or within such time period
provided by the findings and recommendations.  F.R.Civ.P. 72(b)(2).  In this case, the findings and
recommendations provided that any party could file objections within 30 days.  Procedural rules
permit, but do not require, the court to extend for good cause the specified time for performing an
act.  F.R.Civ.P. 6(b).

In this case, on October 18, 2016, Petitioner moved for a thirty-day enlargement of time in
which to file objections, declaring that because of his participation in a vocational trade program, he
was only able to secure time in the law library on Saturdays.  The Magistrate Judge granted the
requested extension.  On November 14, 2016, Petitioner again requested a second thirty-day
extension of time, stating that his law library access was limited by his participation in a vocational
program, a prior prison lock down, and a then-existing partial lock down.  The Magistrate Judge
again granted the requested extension, which enlarged Petitioner's time to respond to a total of
ninety days, but warned Petitioner: "**No further extensions of time will be granted.**"  Doc. 38.
Nonetheless, on December 16, 2016, Petitioner again moved for a 30-day extension of time, stating
that his law library time had been limited by lock downs and his vocational program schedule.  The
Magistrate Judge denied the requested extension.

After allowing more than thirty days for Petitioner to take further action, the District Court
adopted the findings and recommendations and entered judgment on January 17, 2017.  Petitioner
took no action until he mailed his Rule 60(b) motion on April 28, 2017, more than 130 days after the

Magistrate Judge denied the motion to enlarge time and more than 90 days after entry of the judgment.

Petitioner concedes that he filed nothing in response to the denial of his December 2016 motion for enlargement of time but alleges that the delay was attributable to his placement in the Administrative Segregation Unit at the California Correctional Center-Susanville ("Ad-Seg") on December 20, 2016.[2] Petitioner concedes: "Those in Ad-Seg are allowed to request transportation to the law library, and if they are facing legal deadlines, they are give priority status, which may allow them as much as 5 or 6 hours of access per week." Doc. 44 at 7. Nonetheless, assuming that his only course of action was to file objections, Petitioner alleges that he took no action to respond to the denial of the December motion to enlarge time because his property, including his legal property, had been placed in storage for the duration of his disciplinary term.[3] Without his prior work product, Petitioner contends that he could not reasonably proceed. This argument ignores the fact that because the Court had denied Petitioner's third motion for enlargement of time, Petitioner was already precluded from filing objections.

Petitioner admits that he received both the December order denying enlargement of time and the January judgment while he was confined in Ad-Seg. Thus, despite his lack of access to his legal property, Petitioner knew of the adverse developments concerning his petition but took no action to advise Respondent or the Court of his perceived inability to respond to either order. Petitioner provides no reason for his failure to disclose his lack of access to necessary legal materials and to advise the Court and Respondent of his intent to object to the denial of enlargement of time and the entry of judgment following the return of his legal property.

Petitioner takes no responsibility for his lack of diligence, in either his failure to make even a minimal attempt to advise the Court and his adversary of his intent further to pursue his habeas claims upon return of his legal property, or his earlier failure to prepare and file objections within the ninety days following filing of the findings and recommendations. Instead, Petitioner blames prison

---

[2] Although Petitioner actually states that he was subject to Administrative Segregation beginning December 20, 2017, the undersigned assumes that date reflects a clerical error.

[3] Petitioner characterizes his term in Ad-Seg as a *force majeure*, that is "an event that can neither be anticipated nor controlled." Black's Law Dictionary at 673-74 (8th ed. 2004). The undersigned does not agree that disciplinary segregation falls within the category of *force majeure*.

8

staff for failing to respond to his oral and written requests for his legal property and the Magistrate Judge for abusing her discretion in denying his third request for enlargement of time. In blaming prison staff, Petitioner disregards his own failure to advise the Court and Respondent of the change of circumstances following his confinement in Ad-Seg and loss of access to his legal property and Petitioner's intent to challenge the denial of his motion for enlargement of time. In blaming the Magistrate Judge, Petitioner disregards the warning in the November 2016 order that no further extensions would be granted and presupposes that Petitioner was entitled to indefinite extensions of time to file until he had completed his objections.

The undersigned is not persuaded by Petitioner's abdication of responsibility for his own decisions and actions. A party representing himself without an attorney is bound by the Federal Rules of Civil Procedure, the Local Rules, and all other applicable laws in the same way as counsel. Local R. 183(a). Whatever Petitioner's level of education or experience, and in spite of his temporary lack of his legal property, Petitioner could easily have filed a statement of his situation and requested an opportunity to challenge the denial of his December motion for a third extension of time. Instead, Petitioner did nothing.

Nor is the argument that the Magistrate Judge abused her discretion in denying Petitioner's third motion for an extension of time persuasive. By December, Petitioner had been provided with a significant period time in which to file objections and had been advised that the Court would not grant any further extensions.

Petitioner contends that the Magistrate Judge "lacks personal experience of the plight of prisoners with respect to prison conditions and how they can impinge upon their right of access to court and to due process, not to mention equal protection." Doc. 44 at 9. Petitioner suggests that an evidentiary hearing is necessary to establish prison conditions during the period in which Petitioner sought to extend the time period in which to submit objections to the findings and recommendations. The undersigned disagrees.

The undersigned daily addresses cases in which prisoners proceeding *pro se* represent themselves competently, in good faith, and in compliance with applicable time restraints and other procedural rules, and is not persuaded by Petitioner's attempts to evade responsibility for his own

inaction by representing himself as an uneducated and inexperienced inmate. Although Petitioner asserts that a court would abuse its discretion if it refused to provide an additional extension of time, despite an earlier order indicating that no further extensions would be granted, in the event of an unforeseen event such as the inmate's falling into a coma, Petitioner does not allege an unforeseen event. The only reasons offered for the December extension motion were those previously alleged—limited law library time and periodic prison lock downs. Both of these occurrences were reasonably foreseeable. Nor is the undersigned favorably impressed by Petitioner's attempts to shift responsibility to "unresponsive" correctional staff who neglected their "duty" to provide him his legal property following his transfer to Ad-Seg.

For the first time in this motion, Petitioner alleges that the findings and recommendations were so lengthy and so complex that he could not reasonably prepare objections in the time available. This argument is not persuasive. There can be little question that Petitioner was familiar with the grounds that he alleged for habeas relief, his own arguments in support of those grounds, Respondent's arguments in opposition, and the state courts' disposition of those grounds.

Returning to the *Pioneer* continuum of reasons for failing to comply with the filing deadline, the undersigned finds that Petitioner's reasons are very close to the extreme position of ignoring the December deadline for submission of objections. Despite clear warning in the November court order, Petitioner simply assumed that the Court would keep extending the filing date until he was ready to file objections.

**C.**      **Relief Is Not Available Under Rule 60(b)(6)**

Petitioner also seeks relief under R. 60(b)(6), which permits relief from judgment for "any other reason that justifies relief." "Rule 60(b)(6) is not a substitute for [R.] 60(b)(1)." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice." *Id.* "To justify relief under [Rule 60(b)(6)], a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer*, 507 U.S. at 393. "Such circumstances will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

///

## IV. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El*, 537 U.S. at 335-36. The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B)  the final order in a proceeding under section 2255.
>
> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

///

11

Reasonable jurists would not find the Court's determination that Petitioner has not established a basis to set aside the judgment under Rule 60(b) to be debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**V.     Conclusion and Recommendation**

The undersigned recommends that the Court deny the motion to set aside the judgment pursuant to F.R.Civ.P. 60(b) and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **May 29, 2017**                              */s/ Sheila K. Oberto*

                                                    UNITED STATES MAGISTRATE JUDGE